# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FRANCIS GECKER, solely as Chapter 7 )
Trustee for CYNTHIA COLLINS )
)
      **Plaintiff,** )
) No. 16 CV 50153
      v. )
) Magistrate Judge Jeffrey T. Gilbert
MENARD, INC. a/k/a MENARDS )
)
      **Defendant** )
)

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Plaintiff's Motion to Strike Defendant's Expert Barbara King's Report and Bar Her Testimony. [ECF No. 136]. For the reasons stated below, Plaintiff's Motion is denied.

## BACKGROUND

Plaintiff alleges she was injured when a shopping cart made contact with her hip outside of a Menards home improvement store. Plaintiff and two other individuals were present at the time of the accident: Donnie Raulston, the store employee pushing the train of shopping carts, and Cornelia Smiley, a friend with whom Plaintiff was conversing. While the fact that a cart struck Plaintiff is not in dispute, the parties disagree as to the nature, cause, and extent of Plaintiff's injuries. In anticipation of trial, Defendant retained Barbara King, a medical billing expert, to review Plaintiff's medical bills and evaluate their reasonableness. Ms. King ultimately opined that Plaintiff's medical bills were not comprised of usual, customary, and reasonable ("UCR") charges for the medical procedures performed.

**INTRODUCTION**

Federal Rule of Evidence 702 and the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), govern the admissibility of expert testimony in federal court. *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016). The familiar two-step *Daubert* framework allows admission of expert testimony that is "relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable scientific or other expert methods that are properly applied." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014); *see also, Higgins v. Koch Dev. Corp.,* 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and Daubert require the district court to determine whether proposed expert testimony is both relevant and reliable."). The district court is the "gatekeeper" of expert testimony but must be mindful of the fact that "the key to the gate is not the ultimate correctness of the expert's conclusions," but "the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC,* 721 F.3d 426, 431 (7th Cir. 2013).

A court will admit expert testimony only where the expert "(i) is qualified to offer opinion testimony under Rule 702, (ii) has employed a reliable methodology, (iii) proposes to offer opinions that follow rationally from the application of his knowledge, skill, experience, training, or education, and (iv) presents testimony on a matter that is relevant to the case at hand, and thus helpful to the trier of fact." *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 684–85 (N.D. Ill. 2009) (internal quotation marks omitted). The proponent of expert testimony bears the burden of proving the testimony is admissible. *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887 (E.D. Wis. 2010).

An expert may be qualified "by knowledge, skill, experience, training or education" and need not have any "particular credentials." FED. R. EVID. 702; *Tuf Racing Prod., Inc. v. Am. Suzuki*

*Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). The court must consider "'a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.'" *Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 788 (7th Cir. 2007) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). When assessing whether an expert is qualified, the court is "not concerned with the witness's general qualifications." *Hall*, 840 F.3d at 926. Instead, the court examines whether the expert has the necessary qualifications to support "'each of the conclusions he draws.'" *Id.* (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). In other words, the expert must be "qualified to offer opinions in the specific area of his or her proposed testimony." *Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3928598, at *1 (N.D. Ill. 2010).

Courts have broad latitude when deciding whether an expert's testimony is reliable. *Higgins*, 794 F.3d at 704. Reliability involves, "among other things: (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017). To satisfy reliability, an expert may not "simply assert[s] a 'bottom line'" or base her opinion on "subjective belief or speculation." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Rather, an expert's testimony must demonstrate "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

The relevance standard for expert testimony is similarly liberal. *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 6947065, at *2 (S.D. Ill. 2016). Simply put, an expert's testimony must

"assist[] the jury in determining any fact at issue in the case." *Stuhlmacher*, 774 F.3d at 409. If "the jury is able to evaluate the same evidence and is capable of drawing its own conclusions," then the expert's testimony is not helpful. *Sanders v. City of Chicago Heights*, 2016 WL 4398011, at *4 (N.D. Ill. 2016).

The court's application of these admissibility standards "is not intended to supplant the adversarial process." *Ortiz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011). Even "shaky" testimony may satisfy Rule 702 and *Daubert*, *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011), as it ultimately is for the jury to determine the accuracy of admissible expert evidence that has been "tested" through "'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596).

## ANALYSIS

Plaintiff filed the instant Motion to strike Ms. King's report and bar her testimony, arguing that Ms. King's opinion was based on "hearsay" data and therefore unreliable. Plaintiff does not challenge Ms. King's qualifications, nor does she contest the relevance of her testimony. Rather, Plaintiff asserts Ms. King impermissibly relied upon a medical coding database, "Medata," and that her use of this data from a third-party constitutes "hearsay." However, because Ms. King is qualified and her proposed testimony is both relevant and reliable, as explained in detail below, Ms. King's opinions are admissible under *Daubert* and Rule 702. Plaintiff's objections to Ms. King's opinion and testimony, if they are valid at all, go to the weight and not the admissibility of that opinion and testimony.

While Ms. King's qualifications are not in dispute, they are relevant to her knowledge of the field of medical billing and her decision to rely on a particular medical billing database in

forming her opinion. Ms. King is an active, registered nurse in both Illinois and Iowa and received her nursing degree over forty years ago. Ms. King has been involved in medical billing in various capacities during that time, including having done billing at a doctor's office, worked as a nurse case manager negotiating fees for medical treatment, and working at a bill review company, Rising Medical Solutions. While at Rising Medical Solutions, Ms. King reviewed medical bills nationwide, including from various providers and fee schedules. At that time, she also became a certified professional coder. For the last thirteen years, Ms. King has owned a consulting business, NurseValue, Inc., which focuses, in part, on medical cost analysis and medical cost projection. Ms. King has testified as an expert in about two hundred depositions and trials involving bill review since starting NurseValue Inc. All of Ms. King's above-described experience occurred within the state of Illinois, which is where Plaintiff sustained her injuries and received all relevant medical treatment. Ms. King is therefore especially familiar with the custom and practice of medical providers in Plaintiff's geographical area.

Based on the knowledge and experience described above, Ms. King has the necessary skill and training to evaluate Plaintiff's medical bills and render an opinion on whether they are within the usual, customary, and reasonable cost of similarly situated procedures. As for her methodology, Ms. King reviewed Plaintiff's medical bills to determine whether they were at or below the UCR billing of similar services by the same provider types within the same geographical area. Specifically, Ms. King reviewed Plaintiff's bills from American Chiropractic & Pain, ATI, Munster Special Surgery Center, and Hinsdale Orthopedic and determined that their total cost of $745,327.11 was well in excess of the UCR cost of $256,739.76. In arriving at the UCR cost, Ms. King utilized a nationwide database of medical billing codes called "Medata," to which Ms. King subscribes. During her deposition, Ms. King described Medata as a database which compiles data

of the actual charge for medical services, including the date, the Current Procedural Terminology ("CPT") medical code identifying the type of service, who performed the medical procedure, and the zip code in which it was performed. Ms. King explained that she uses Medata, together with her knowledge of CPT codes and billing practices in the medical field, to analyze the reasonableness of the charges associated with the CPT codes submitted for Plaintiff's medical treatment. If the charges are within the 80th percentile of the cost for similar medical treatment, Ms. King determines that they are reasonable. In this case, Ms. King's methodology revealed several discrepancies in Plaintiff's medical records, most notably involving Munster Specialty Surgery Center. For example, based on the CPT codes Munster Specialty billed, Ms. King opined that Munster Specialty duplicated a $73,704 surgical charge and billed two full surgeon rates during Plaintiff's surgery, which in her opinion, was not consistent with standard business practice.

Plaintiff's quarrel with Ms. King's opinion is her use of a CPT code database, Medata. However, the *Daubert* framework, together with Federal Rule of Evidence 703, allows Ms. King to rely upon industry standards and comparison data sources to establish the reasonableness of a particular medical bill. "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." FED. R. EVID. 703. Thus, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.*

During her deposition, Ms. King explained that within the field of medical billing, it is common industry practice to use a CPT code database to compare prices among like services. [ECF No. 136-3, p. 6]. Medata is just one available database, but according to Ms. King, it is a "tally system" of the actual charge data and updates every year. [ECF No. 136-3, p. 13]. Ms. King uses Medata as part of her methodology in every case, in which she reviews an individual's actual

medical records and billing codes, gets 80th percentile price data from Medata for similar medical services, and compares the two in a final record review to determine whether the individual's medical bills are usual, customary, and reasonable. [ECF No. 136-3, p. 8]. CPT medical billing codes themselves are standardized: they are assigned by the American Medical Association ("AMA") to various medical services for the purpose of communicating uniform information about medical services and procedures. [ECF No. 136-3, p. 6]. The AMA specifies what type of procedure or medical professional may be included in a particular CPT code, so that any individual familiar with that medical services and billing may identify the type of procedure performed, who was present, and how it compares to the amount charged by another provider for the same type of service. [ECF No. 136-3, p. 6]. Ms. King also utilizes other standardized data sources in analyzing medical billing data, including but not limited to the AMA's National Drug Code, the National Correct Coding Edits, and the CPT Assistant. [ECF No. 136-3, pp. 6-7].

Given the level of standardization in the medical billing field regarding CPT coding, Ms. King is entitled to rely upon a nationwide database of CPT codes – specifically Medata – to analyze Plaintiff's medical bills and form her opinion. *See, e.g., Contreras v. Brown,* 2019 WL 2080143, at *4 (D. Ariz. 2019). As Ms. King explained during her deposition, using a database like Medata is not only consistent with her own custom and practice, but also is within the custom and practice of others in the medical billing field. [ECF No. 136-3, pp. 7-9]. While the algorithm or formula Medata uses to compile nationwide billing data may not be available to Plaintiff, Ms. King has provided the underlying CPT codes and UCR cost data compiled by Medata as part of her report. [ECF No. 136-2, p. 4-27]. Plaintiff is therefore able to test the basis of Ms. King's opinion through cross-examination at trial, or through her own independent medical billing expert, if Plaintiff so

7

chooses. *Meds. Co. v. Mylan Inc.*, 2014 WL 1257943 (N.D. Ill. 2014) (challenge to expert's conclusions and methodology can be addressed through "rigorous cross-examination at trial").

Exclusion of the testimony and opinion of Ms. King, a qualified expert who utilized a sound methodology, is not appropriate in this case. Rather, if Plaintiff believes the data upon which Ms. King has relied is inaccurate, that is something that typically goes to the weight, not the admissibility, of Ms. King's testimony. As the Seventh Circuit has explained, whether Ms. King, in using the Medata database, "selected the best data set to use…is a question for the jury, not the judge." *Manpower, Inc. v. Ins. Co. of Pennsylvania,* 732 F.3d 796, 809 (7th Cir. 2013). There is a rational connection between the data Ms. King relied upon and her opinion, and as a result, even if she relied on "faulty information," this is "a matter to be explored on cross-examination; it does not go to admissibility." *Id.* (citing *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 589 (7th Cir.2000)). Therefore, Plaintiff may utilize the "traditional and appropriate means" of attacking expert evidence with which she disagrees: "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Lapsley,* 689 F.3d at 817 (citing *Daubert*, 509 U.S. at 596).

The Court also notes that several of Ms. King's conclusions were made independent from Medata, the use of which formed the sole basis of Plaintiff's challenge to Ms. King's expert opinion. The two most egregious billing inconsistencies in Plaintiff's medical costs, as Ms. King opined, came from the fact that Munster Specialty Surgery Center duplicated a $73,704 surgical charge and billed two full surgeon rates during Plaintiff's surgery. Ms. King's conclusion that Munster Specialty improperly chose to bill for two surgeries, when only one occurred, did not require any UCR cost information from Medata. Rather, this conclusion was based on Ms. King's own analysis of the CPT codes provided by Munster Specialty and her resulting expert opinion

that it is not usual, customary, or reasonable for any medical office to bill for the same procedure twice. This further weighs in favor of the admissibility of Ms. King's testimony, which the Court finds passes *Daubert* muster.

**CONCLUSION**

For all the reasons discussed above, Plaintiff's Motion to Strike Barbara King's Report and Bar Her Testimony is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 21, 2019