IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCIS GECKER, solely as Chapter 7 Trustee for CYNTHIA COLLINS<br><br>Plaintiff,<br><br>v.<br><br>MENARD, INC. a/k/a MENARDS<br><br>Defendant. | No. 16 C 50153<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendant's Motion to Strike Plaintiff's Rule 26(a)(2)(C) Expert Disclosure of Dr. Harold Rees and Limit His Testimony [ECF No. 137]. For the reasons discussed below, Defendant's Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff alleges she was injured when a shopping cart made contact with her hip outside of a Menards home improvement store in 2014. While the fact that a cart struck Plaintiff is not in dispute, the parties disagree as to the nature, cause, and extent of Plaintiff's injuries, including whether a right hip replacement performed by Dr. Harold Rees, M.D., about five years after the accident was causally related to it.

Defendant deposed Dr. Rees in April of 2019. Months after that deposition, Plaintiff served a delayed disclosure for Dr. Rees under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure. That disclosure stated Dr. Rees would give expert testimony at trial both as Plaintiff's treating physician and with respect to the cause of Plaintiff's right hip injury. Defendant now asks that Plaintiff's Rule 26(a)(2)(C) disclosure be stricken as untimely and because it is not consistent with

Dr. Rees's deposition testimony. It is not clear what Defendant hopes to accomplish by striking the Rule 26(a)(2)(C) disclosure, as Dr. Rees has been deposed and Defendant does not seek to bar Dr. Rees from testifying at trial. Defendant also challenges the substantive admissibility of Dr. Rees's causation testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). The Court addresses Defendant's arguments in turn.

## ANALYSIS

### I. Plaintiff's Rule 26(a)(2)(C) Disclosures

Pursuant to the discovery schedule set by the Court and agreed upon by the parties, Plaintiff was to make her Rule 26(a)(2) disclosures by March 27, 2019. With respect to Dr. Rees, Plaintiff did not do so. Yet Defendant went forward with Dr. Rees's deposition on April 2, 2019, despite not having received the Rule 26(a)(2)(C) disclosure of Dr. Rees's opinions and the basis for them. On July 16, 2019, more than three months after Defendant deposed Dr. Rees, Plaintiff served her Rule 26(a)(2)(C) disclosure. Defendant now complains that Plaintiff's disclosure does not conform to Dr. Rees's prior deposition testimony in some respects and asks that the disclosure be stricken.

Neither party disputes that Plaintiff's Rule 26(a)(2)(C) disclosure regarding Dr. Rees was untimely. That disclosure was not only produced after the Court's deadline, but after Dr. Rees had been deposed. The question for the Court is what consequence, if any, is appropriate for that untimely disclosure where Defendant had a right to insist on receiving the disclosure before Dr. Rees's deposition, pursuant to the Court's scheduling order, but chose not to do so. While Defendant says Plaintiff's late Rule 26(a)(2) disclosure for Dr. Rees conflicts with his prior deposition testimony, it is not clear to the Court there is a material conflict between the two. But the Court need not resolve that issue to rule on Defendant's Motion. Further, even if any conflict exists, that certainly is a risk of which Defendant was aware when it chose to proceed with Dr.

2

Rees's deposition having not received the Rule 26(a)(2)(C) disclosure it was entitled to receive before taking the deposition.

Under Federal Rule of Civil Procedure 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." The Seventh Circuit has likewise affirmed that the exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless the non-disclosure was justified or harmless. *Finley v. Marathon Oil Co.,* 75 F.3d 1225, 1230 (7th Cir. 1996). In assessing the harmlessness of a Rule 26 violation, courts are to consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Westefer v. Snyder,* 422 F.3d 570, 585 n. 21 (7th Cir.2005) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

The purpose of the Rule 26 expert disclosure requirements is to prevent surprise or prejudice to the opposing party. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000) (expert discovery rules "are designed to aid the court in its fact-finding mission by allowing both sides to prepare their cases adequately and efficiently and to prevent the tactic of surprise from affecting the outcome of the case"). Here, Defendant does not argue that it was surprised by anything Dr. Rees said in his deposition, suggesting instead that it was surprised by the later served Rule 26(a)(2)(C) disclosure. Yet this supposed surprise ultimately is harmless under the circumstances of this case, especially in terms of Defendant's ability to prepare for trial.

Based on the deposition transcript, Defendant had received all relevant reports and medical records, including Dr. Rees's curriculum vitae, prior to deposing Dr. Rees. Even without the proper

Rule 26 disclosure, the transcript also shows Defendant was aware Dr. Rees performed Plaintiff's right hip replacement and that he had formed an opinion as to the likely cause of her injury based on his treatment and the patient's medical history provided to him. Defendant also had already retained a rebuttal expert, Dr. William J. Hopkinson, [1] to respond to Dr. Rees' anticipated causation opinion. With all the above information in hand, Defendant then took Dr. Rees's deposition on April 2, 2019. Therefore, in this case, the late Rule 26 disclosure did not cause Defendant to "miss its opportunity to disqualify the expert, retain rebuttal experts, or hold depositions for an expert." *Tribble v. Evangelides,* 670 F.3d 753, 759-60 (7th Cir. 2012). In fact, through Dr. Rees's deposition, Defendant arguably learned more information than it would have received in a typical Rule 26(a)(2)(C) disclosure about the basis and scope of Dr. Rees' expert opinion. Plaintiff's failure to provide a timely Rule 26 disclosure for Dr. Rees, therefore, has not stymied Defendant's ability to mount a defense to Plaintiff's claims in this case. All parties are on notice as to the anticipated subject matter and scope of Dr. Rees's potential trial testimony, making Plaintiff's failure to timely disclose under Rule 26 harmless in this particular instance.

Other courts agree that untimely Rule 26 disclosures may be harmless where the opposing party had an opportunity to depose the expert or was otherwise aware of the substance of the expert's opinion. *See generally, Banister v. Burton*, 636 F.3d 828, 833-34 (7th Cir. 2011) ("even if a report was necessary under [Rule 26(a)(2)(B)], the failure to file one was clearly harmless because [plaintiff] wasn't surprised by the doctor's testimony—he heard it before in the state trial. Also, [plaintiff] provides no evidence that the failure to file the report was in bad faith."); *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.,* 138 F. Supp. 2d 1088, 1094 (N.D. Ill. 2001)

---

[1] Defendant retained Dr. William J. Hopkinson, M.D., to conduct an independent medical examination of Plaintiff and opine as to the cause of Plaintiff's injuries. Dr. Hopkinson is also a board-certified orthopedic surgeon and Surgeon-in-Chief at Loyola University Medical Center.

(where plaintiff failed to serve an expert report under Rule 26 for one of its experts, the violation was harmless because plaintiff previously disclosed the expert's existence, there was no evidence of plaintiff's bad faith in failing to serve the report, defendant neither objected to having not received the Rule 26 disclosures nor filed a Rule 37 motion to exclude the expert's testimony, and defendant deposed the expert prior to trial).

Similarly, in *Kondragunta v. Ace Doran Hauling & Rigging Co.,* 2013 WL 1189493 (N.D. Ga. 2013), the plaintiff's failure to make appropriate Rule 26(a)(2)(C) disclosures was harmless where the names of the experts and general subject matter of their testimony previously had been disclosed to the defendants. In declining to strike the experts' testimony, the court focused, in part, on the fact that the defendants "had the ability to complain, and thereby cure this surprise, prior to the expiration of expert discovery, by advising plaintiff that his disclosures did not comply with the rule and by requesting more specific disclosures" but did not do so. *Id.* at *8. Here, Defendant knew Plaintiff had not made her Rule 26(a)(2)(C) disclosure for Dr. Rees and, as in *Kondragunta,* never moved to force Plaintiff to do so, either before or after Dr. Rees's deposition. Rather, Defendant affirmatively chose to depose Dr. Rees without the required disclosure in hand, which seriously weakens Defendant's ability now to complain about that state of affairs.

Defendant's real complaint seems to be that when Plaintiff finally made her Rule 26(a)(2)(C) disclosure for Dr. Rees, that disclosure, in Defendant's view, was not consistent with the testimony Dr. Rees gave at his deposition. Again, though, that is a risk Defendant ran by going forward with the deposition without the Rule 26(a)(2)(C) disclosure. As noted above, the Court does not necessarily agree with Defendant's assessment that a conflict exists. There does not appear to be a material discrepancy between Dr. Rees's deposition testimony and the Rule

26(a)(2)(C) disclosure, other than that the Rule 26(a)(2)(C) disclosure is somewhat broad, general, and conclusory in certain areas where the deposition testimony is a bit more specific.

Moreover, even if the late Rule 26(a)(2)(C) disclosure ultimately does conflict with Dr. Rees's deposition testimony, the disclosure itself is not admissible in evidence. It is a discovery vehicle intended to provide information before a deposition or trial testimony. By not striking the Rule 26(a)(2)(C) disclosure, the Court effectively is constraining Dr. Rees's trial testimony to the opinions contained in that disclosure, at least at the outer limits. In addition, if Dr. Rees strays from, or testifies inconsistent with, his deposition testimony at trial, Defendant still has the tools of cross-examination at its disposal, including using the transcript of Dr. Rees's deposition testimony under oath to impeach him consistent with the Federal Rules of Evidence. If Dr. Rees testifies at trial in a manner consistent with his deposition testimony, Defendant appears to have no need to use the Rule 26(a)(2)(C) disclosure at trial. Finally, if either party seeks to use the Rule 26(a)(2)(C) disclosure at trial, the Court can address that situation in the context in which it arises.

While any detriment Defendant suffered from not having Plaintiff's Rule 26(a)(2)(C) disclosure before Dr. Rees's deposition was caused, in large part, by Defendant's decision to go forward with that deposition without the disclosure in hand, the Court does not mean to excuse Plaintiff's failure to serve the disclosure when she was required to do so by court order. That was wrong. But it was Defendant's responsibility to bring that default to the Court's attention if it wanted to invoke the remedies provided in the Federal Rules of Civil Procedure for such a foul. Just as Plaintiff should have complied with her disclosure requirements under the Federal Rules of Civil Procedure, so too is Defendant confined by the remedies the Rules provide – remedies which it did not invoke. To that end, it is worth noting that Defendant does not ask the Court for the remedy that, if raised at the appropriate time, would have been available to it: barring Dr. Rees

from testifying at trial. Rather, Defendant apparently only wants to limit Dr. Rees to what he said during his deposition. But the Court is not inclined to provide Defendant a free pass for not timely raising the Rule 26(a)(2)(C) disclosure issue and now allow Defendant to retroactively limit or micromanage the permissible scope of Dr. Rees's trial testimony on the eve of trial. And the Federal Rules of Civil Procedure do not seem to provide the Court with a vehicle to do so.

The bottom line is that Plaintiff's default does not seem to have prejudiced Defendant. If it did, Defendant had ability to avoid that situation by timely invoking the remedies provided by the Federal Rules of Civil Procedure. Just as the deposition went forward without Plaintiff's Rule 26(a)(2)(C) disclosure, so too will the trial be undeterred by Plaintiff's untimely disclosure served after Dr. Rees was deposed. For all these reasons, the Court declines to strike Plaintiff's untimely Rule 26(a)(2)(C) disclosure regarding Dr. Rees.

**II. Admissibility of Dr. Rees's Testimony Under Rule 702 and *Daubert***

The issue of Plaintiff's untimely Rule 26(a)(2)(C) disclosure aside, Defendant urges the Court to bar portions of Dr. Rees's testimony that it considers "speculative" and unreliable. [ECF No. 137, p. 5]. Defendant argues that while Dr. Rees may be qualified as an expert witness and his testimony may be relevant to the claims and defenses in this case, he does not base his causation opinion on objective facts or data, making that specific opinion inadmissible at trial. For the reasons discussed below, Dr. Rees's causation opinion, with limited exception, passes *Daubert* muster and may be presented to the jury.

Rule 702 and the United States Supreme Court's decision in *Daubert* govern the admissibility of expert testimony in federal court. *Hall v. Flannery*, 840 F.3d 922, 926 (7th Cir. 2016). The familiar two-step *Daubert* framework allows admission of expert testimony that is "relevant to a fact in issue, is based on sufficient facts or data, and is the product of reliable

7

scientific or other expert methods that are properly applied." *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014); *see also, Higgins v. Koch Dev. Corp.,* 794 F.3d 697, 704 (7th Cir. 2015) ("Rule 702 and Daubert require the district court to determine whether proposed expert testimony is both relevant and reliable."). The district court is the "gatekeeper" of expert testimony but must be mindful of the fact that "the key to the gate is not the ultimate correctness of the expert's conclusions," but "the soundness and care with which the expert arrived at her opinion." *Schultz v. Akzo Nobel Paints, LLC,* 721 F.3d 426, 431 (7th Cir. 2013).

A court will admit expert testimony only where the expert "(i) is qualified to offer opinion testimony under Rule 702, (ii) has employed a reliable methodology, (iii) proposes to offer opinions that follow rationally from the application of his knowledge, skill, experience, training, or education, and (iv) presents testimony on a matter that is relevant to the case at hand, and thus helpful to the trier of fact." *Mintel Int'l Grp., Ltd. v. Neergheen*, 636 F. Supp. 2d 677, 684–85 (N.D. Ill. 2009). The proponent of expert testimony bears the burden of proving the testimony is admissible. *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 887 (E.D. Wis. 2010).

An expert may be qualified "by knowledge, skill, experience, training or education" and need not have any "particular credentials." FED. R. EVID. 702; *Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000). The court must consider "'a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.'" *Trustees of Chicago Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 788 (7th Cir. 2007) (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000)). When assessing whether an expert is qualified, the court is "not concerned with the witness's general qualifications." *Hall*, 840 F.3d at 926. Instead, the court

examines whether the expert has the necessary qualifications to support "'each of the conclusions he draws.'" *Id.* (quoting *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010)). In other words, the expert must be "qualified to offer opinions in the specific area of his or her proposed testimony." *Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3928598, at *1 (N.D. Ill. 2010).

Courts have broad latitude when deciding whether an expert's testimony is reliable. *Higgins*, 794 F.3d at 704. Reliability involves, "among other things: (1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 844 (7th Cir. 2017). To satisfy reliability, an expert may not "simply assert[s] a 'bottom line'" or base her opinion on "subjective belief or speculation." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Rather, an expert's testimony must demonstrate "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

The relevance standard for expert testimony is similarly liberal. *Hale v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 6947065, at *2 (S.D. Ill. 2016). Simply put, an expert's testimony must "assist[] the jury in determining any fact at issue in the case." *Stuhlmacher*, 774 F.3d at 409. If "the jury is able to evaluate the same evidence and is capable of drawing its own conclusions," then the expert's testimony is not helpful. *Sanders v. City of Chicago Heights*, 2016 WL 4398011, at *4 (N.D. Ill. 2016).

The court's application of these admissibility standards "is not intended to supplant the adversarial process." *Ortiz v. City of Chicago*, 656 F.3d 523, 536 (7th Cir. 2011). Even "shaky" testimony may satisfy Rule 702 and *Daubert*, *Bielskis v. Louisville Ladder, Inc.,* 663 F.3d 887,

894 (7th Cir. 2011), as it ultimately is for the jury to determine the accuracy of admissible expert evidence that has been "tested" through "'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 805 (7th Cir. 2012) (quoting *Daubert*, 509 U.S. at 596).

Dr. Rees's qualifications, though not in dispute, inform the Court's analysis of the types of opinions he may render consistent with *Daubert.* Dr. Rees received his bachelor's degree in 1995 from the University of Pennsylvania, followed by his medical degree at Temple University in 2002. He is a board-certified orthopedic surgeon and associate professor at Loyola University Medical Center, where he has practiced in his capacity as an orthopedic surgeon for over a decade. Dr. Rees's medical practice focuses primarily on treatment of hip and knee osteoarthritis with joint replacement surgery and he is well-published in this area.

On February 27, 2019, Dr. Rees performed a right total hip arthroplasty on Plaintiff. Based on Dr. Rees's deposition and Plaintiff's delayed Rule 26(a)(2)(C) disclosure, Dr. Rees primarily intends to testify regarding the nature and extent of Plaintiff's right hip injury and the medical treatment he provided. More controversially, Plaintiff also wants Dr. Rees to testify that Plaintiff's right hip injury is causally related to the accident at Menards, an opinion Defendant characterizes as too "speculative" under *Daubert* to be presented to a jury.

In reviewing Dr. Rees's deposition transcript, the Court is mindful that even "shaky" testimony may satisfy Rule 702 and pass muster under *Daubert*. *Bielskis*, 663 F.3d at 894. *Daubert* tests an expert's methodology, not the ultimate strength of the expert's opinion. *Id.* Dr. Rees's methodology here was not fatally unsound, insofar as he based his causation opinion on a patient history he received directly from Plaintiff, as well as his review of Plaintiff's medical history, to the extent it was available to him. Specifically, Dr. Rees reviewed arthroscopic pictures from

10

Plaintiff's prior surgery in 2015 and x-rays taken at Dr. Rees's office in anticipation of Plaintiff's medical treatment. While there certainly are additional records Dr. Rees could have reviewed, under *Daubert,* he need not review each and every fact available in Plaintiff's case for his opinion to be admissible; "only a 'sufficient' amount is required." *Hoskins v. Gunn Trucking*, 2010 WL 4000123 (N.D. Ind. 2010) (citing FED. R. EVID. 702(1)). The oral history Dr. Rees received from Plaintiff, coupled with own medical examination of Plaintiff, was sufficient to render a causation opinion based on his years of education, training, and medical experience.

To the extent Defendant believes Dr. Rees did not have all the facts he should have had when he formed his causation opinion, Defendant is well-poised for precisely the type of "vigorous cross-examination" *Daubert* encourages. *Lapsley,* 689 F.3d at 805. Dr. Rees himself admitted he was provided a relatively limited medical history upon which to rely in forming his opinion. [ECF No. 137-2, p. 70-72] ("Well, it's hard for me to know one way or another. It sounds like [Dr. Hopkinson] had a lot more information to – to base his opinion.") ("As far as [causation of the incident] goes, I mean, you know, it sounds like [Dr. Hopkinson] has more information, and so his opinion certainly may have a little more education in it as far as that goes. Again, I just go off of what the patient tells me."). But even that limited medical history was sufficient to treat Plaintiff's medical condition and form a relevant and reliable opinion as to the cause of Plaintiff's right hip injury. Under *Daubert,* any shortcomings Defendant perceives in Dr. Rees's causation opinion, or the facts upon which he relied in coming to that opinion, are matters that go to the weight, not the admissibility, of his testimony. *See, e.g., Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 589 (7th Cir. 2000) (an expert's reliance on faulty information is a matter to be explored on cross-examination; it does not go to admissibility). The Court therefore will not prevent Dr. Rees from testifying to opinions that, in Defendant's view, are entitled to little weight because they are not based on

sufficient information. That is fodder for cross-examination and argument to the jury, not for a motion to *in limine* to bar that testimony completely.

Defendant also appears to challenge Dr. Rees's ability to apply his decades of experience as an orthopedic surgeon to the facts of Plaintiff's case in forming his causation opinion. However, Rule 702 specifically allows a witness to be "qualified as an expert by knowledge, skill, *experience*, training, or education." *Metavante Corp.,* 619 F.3d at 761 (citing FED.R.EVID. 702 (emphasis added)). "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data." *Id.*

The Court will grant Defendant's Motion in two respects, however. To the extent Dr. Rees was asked to opine during his deposition about the amount of force required to cause an injury to someone in Plaintiff's position at the time of the accident, that opinion is beyond the scope of Dr. Rees's qualifications. [ECF No. 137-2, p. 55-57]. Dr. Rees admitted as much when he was asked to provide an opinion on this subject during his deposition. [ECF No. 137-2, p. 56] ("I'm certainly not an expert on, you know, forces of – you know, how much force it takes."). The Court accepts Dr. Rees's admitted lack of expertise in this area and will bar him from testifying at trial regarding the forces exerted during the accident involving Plaintiff.

Furthermore, Defendant expresses concern that Dr. Rees will attempt to testify regarding the cause of injuries he did not treat and of which he has no knowledge, such as injuries to Plaintiff's left hip. But that is not the Court's reading of Dr. Rees's deposition testimony or of Plaintiff's Rule 2(a)(2)(C) disclosure for Dr. Rees. [ECF No. 137-1, p. 1] ("[Dr. Rees] will also testify and give an opinion that all the injuries *he treated the plaintiff for* are causally connected to the occurrence the plaintiff was involved in on April 29, 2014…) (emphasis added). Dr. Rees himself readily admits he did not treat, or review any records related to, Plaintiff's other injuries,

and cannot offer any opinion as to their cause or treatment. [ECF No. 137-2, p. 22-24]. The Court therefore agrees with Defendant – and Dr. Rees himself, it seems – that Dr. Rees cannot testify at trial regarding the cause or treatment of any injury Plaintiff suffered, except with respect to her right hip. Dr. Rees therefore is barred from doing so at trial.

## CONCLUSION

For all the reasons discussed above, Defendant's Motion to Strike Plaintiff's Rule 26(a)(2)(C) Expert Disclosure of Dr. Harold Rees and Limit His Testimony [ECF No. 137] is granted in part and denied in part. Defendant's Motion is denied to the extent Defendant asks the Court to strike Plaintiff's untimely Rule 26(a)(2)(C) disclosure for Dr. Rees and as to Defendant's *Daubert* challenge to Dr. Rees's testimony about the cause of any injury to Plaintiff's right hip. Defendant's Motion is granted to the extent Defendant has raised a *Daubert* challenge to Dr. Rees's proposed testimony about the amount of force required to cause an injury to someone in Plaintiff's position at the time of the accident, and as to any testimony by Dr. Rees regarding the treatment or cause of any injuries Plaintiff suffered beyond the right hip condition that Dr. Rees treated. Dr. Rees will be permitted to testify at trial subject to the limitations described in this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 3, 2019